

2003 DEC -9  P 2: 31

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KATHERINE DUDLEY,<br>    Plaintiff, | : | CIVIL CASE NO. 3:03cv0273(SRU) |
| | : | |
| VS. | : | |
| | : | |
| NBD, LLC; AND | : | |
| GERALD B. HADELMAN,<br>    Defendants. | : | DECEMBER 5, 2003 |

## MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.    Background

On May 17, 2000, articles of organization of the defendant, NBD, LLC, were filed with the

Connecticut Office of the Secretary of State.  NBD, LLC was formed as a limited liability

company pursuant to the general statutes of the State of Connecticut.  Initially, the plaintiff was

to possess a thirty-nine percent interest in the company.  However, based on the

misrepresentations made by the defendant, Hadelman, which are not relevant for the purposes of

the present motion, the plaintiff was induced on October 18, 2000, to transfer to the defendant,

Hadelman, twenty-four percent of her thirty-nine percent interest to the defendant, Hadelman,

leaving her with a fifteen percent interest in the company. Hadelman's interest increased to seventy-five percent.[1]

It is indisputable that the plaintiff commenced working for NBD, LLC, managing the evening shift of the Subway # 10 franchise owned by the defendant, NBD, LLC. The defendant, Hadelman, from the start was the managing member of NBD, LLC. He did the hiring and firing, established the hours and wages, set the schedules for the employees of NBD, LLC, including the plaintiff. The books and accounts of NBD, LLC were maintained by the defendant, Hadelman. Hadelman directed the work force, assigning employees to work interchangeably at his other subway franchise, Subway # 98. The other member of the LLC, Lisa Dudley, acted on occasion as the manager of Subway # 10[2] and Subway # 98.

The plaintiff was treated solely as an employee of NBD, LLC, and not as an employer. The events surrounding her termination clearly bespeak a role as an employee subservient to the authority of the defendant, Hadelman. The way Hadelman terminated the plaintiff's employment is irrefutable proof of the plaintiff's role as an employee. Hadelman terminated the plaintiff for not working the hours he had assigned to the plaintiff. The plaintiff was not expelled from the LLC; she was fired from her job. By letter dated June 11, 2001, the defendant, Hadelman,

---

[1] Hadelman admits that he did not pay the plaintiff any consideration for the transfer of the twenty-four percent interest. Hadelman, dep. p. 62.
[2] Subway # 10 was owned by NBD, LLC of which Hadelman possessed a seventy-five per cent interest. Subway # 98 was owned by a corporation of which Hadelman owned a one hundred per cent interest.

confirmed "that your employment as operator of Subway® franchise No. 10 in Middletown, Connecticut terminated on June 6, 2001." In the letter of termination, the defendant, Hadelman, ostensibly acting on behalf of NBD, LLC, offered the plaintiff a severance package. (Exhibit 2). He also submitted that he would forgive a promissory note that the defendant, Hadelman, had the plaintiff sign in furtherance of his scheme to defraud the Internal Revenue Service. (Hadelman, dep. pp. 50-54). When the plaintiff didn't respond to the Hadelman proposal, Hadelman, on June 22, 2001, informed the plaintiff that she could keep her health insurance coverage by making COBRA payments. (Exhibit 3).

II.    *Discussion*

The defendants' motion for summary judgment is based on two claims. First, the defendant asserts that the plaintiff is not an employee of the defendant, NBD, LLC; she is in fact an owner of the company. Second, the defendant claims that less than fifteen employees worked for the defendant, NBD, LLC, therefore, the defendant, NBD, LLC does not come within the Title VII definition of employer.

a. *Standard for Deciding Motion for Summary Judgment*

3

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See *Cronin v. Aetna Life Insurance Co.*, 46 F.3d 196, 202; *Chambers v. TRM Centers Corp.*, 43 F.3d 29, 36 (2d Cir. 1994); *Stern v. Trustees of Columbia University in City of New York*, 131 F.3d 305 (2d Cir. 1997). ("It is of course well established that a motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See Fed.R.Civ.P. 56(c). In assessing the record to determine whether there is such an issue, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. . .") A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See *Doe v. Dept. of Public Safety*, 271 F.3d 38, 47 (2d Cir. (2d Cir. 2001) (Internal citations and quotations omitted).

### b. Employee Status of the Plaintiff

In advancing their first argument, the defendants misstate the provisions of Connecticut statutory law as well as the content of the Operating Agreement of NBD, LLC to imply that the

plaintiff, an owner of a 15 % interest in the LLC, had the authority, individually, to manage and operate the defendant, NBD, LLC. This is simply not true. Under the terms of the relevant Connecticut General Statutes and the provisions of NBD, LLC's Operating Agreement, the plaintiff did not possess the authority of an owner of the business. Connecticut General Statutes § 34-142(a) provides, "the affirmative vote, approval or consent of a majority in interest of the members, if management of the limited liability company is vested in the members, or more than one-half by number of the managers, if management of the limited liability company is vested in managers, shall be required to decide any matter connected with the business or affairs of the limited liability company." Likewise, the Operating Agreement provides that "each member, acting alone, upon the consent of a Majority in Interest, shall have the power to take such actions and sign such instruments as the Member decides in good faith are useful in carrying out the business of the Company..." (Exhibit 1, Article VI, § 6.1(a)). Obviously, the plaintiff's authority with regard to the operation of the NBD, LLC is severely limited, if not non-existent; the plaintiff's acts must always have the approval of the defendant, Hadelman.

The composition of the NBD, LLC clearly places the power and control of its activities within the hands of the defendant, Hadelman, the owner of a seventy-five per cent interest in the company. Whatever authority the plaintiff possesses is purely illusory. The defendants' assertion that pursuant to the terms of the Operating Agreement the plaintiff has co-extensive

powers to those of the defendant, Hadelman, lacks credence.  The language of the Operating

Agreement, "...each Member shall have the authority to manage the Company and conduct the

day to day operations of the Company business", upon which they base their claim is clearly

taken out of context.  In advancing their argument, the defendants ignore the remainder of the

sentence, "each Member, acting alone, *upon the consent of a Majority in Interest* shall have the

power to take such actions..."  Plainly, the plaintiff, acting alone, possessed no authority to

manage and operate the business of the company.  Only the defendant, Hadelman, possessed that

kind of unilateral authority, which he wielded in the daily operation of Subway # 10.  If there be

any doubt as to the plaintiff's authority vis-à-vis Hadelman's authority, the language employed

in Article 6, § 6-3 dispels it.  Article 6, § 6-3 states, "[a]ll references in this Agreement to

consents, approvals, decisions, action, or other exercise of rights collectively ("Action") by

Members shall be effective and bind the Company if taken by the affirmative vote or written

consents of a Majority in Interest, except where a Super Majority in Interest or other approval is

expressly required by the Act, the Articles or this Agreement.  The Members acknowledge that,

to the maximum extent allowed by the Act, all votes on all matters will be based on the Members

Percentage Interests and not on a per capita or other manner of voting.  This provision may only

be changed by a Super Majority in Interest."  Not only did Hadelman possess the Majority in

Interest, he, likewise, possessed the "Super Majority in Interest."

The reality of the management of NBD, LLC mirrors that which was envisioned in the Operating Agreement. Hadelman controlled the operations of NBD, LLC to the exclusion of the plaintiff. Hadelman did the hiring and firing; Hadelman set the work schedules; Hadelman kept the records and accounts of NBD, LLC; Hadelman transferred employees between NBD, LLC and Subway # 98, the other company he owned; and Hadelman unilaterally terminated the plaintiff's employment. And, when the plaintiff did not accept his "severance arrangement", he required her to pay for her own health insurance, (Exhibit 3), offering "to cobra [her] through the company". Whatever authority the plaintiff possessed was mere window dressing. The day to day management of the business of NBD, LLC was exercised by the defendant, Hadelman. Hadelman was the managing member of the LLC. (Hadelman, dep. p. 55). Hadelman made out the plaintiff's work schedule (Hadelman, dep. p. 55). Hadelman granted or refused the plaintiff permission to take time off from work. He hired and fired the employees at Subway # 10, including the plaintiff. Other than for Hadelman, no other member of the LLC fired any employee working for NBD, LLC. (Hadelman, dep. p. 61). As evidenced by the Operating Agreement, the defendant, Hadelman, possessed sole control of the operations of NBD, LLC; he was the super majority[3]. The plaintiff was paid a salary of $500.00 per week together with health insurance benefits. Withholding taxes and social security taxes were deducted from her

---

[3] As defined by the Operating Agreement, "Super Majority in Interest" means Members holding an aggregate of Fifty-One per cent (51%) or more of the Percentage Interests held by all Members."

wages.  The plaintiff's work schedule was set by the defendant, Hadelman.  Under the terms of the operating agreement, the wages paid to the plaintiff was for work performed on behalf of the company.  (Exhibit 1, Article V, § 5.3).

The fiction that the plaintiff possessed the attributes of an owner/employer of the company is simply a deception by the defendants to avoid answering the substantive charges brought by the plaintiff against them.  The manner in which the plaintiff was fired unquestionably demonstrates her treatment by the defendants as an employee subject to their authority and control.

\*\*\*

Q. Tell me what happened on June 6th to the best of your recollection.

A. Before, I went to work?

Q. Let's start with when you got to work?

A. I walked in the door.

Q. Give us the time of day please.

A. About quarter to five.  I think I got back into Middletown around 4:30.

Q. This is the afternoon.

A. Yes, I picked my daughter up at 4 P.M.  There or about

4 P. M.  Got back to Middletown around 4:30 P.M.  Got to the

shop about quarter to five.  And I walked in.  He was in front.

Came to the back, approached me in front of the office, said we

have to talk.  I said okay.  Which we usually do every day.  You

tell about the day, review the day's progress and such, and then the

shift is taken over by me and he goes home.  Or, whomever.

We went into the office.  And he started that I was

terminated because, 'You refuse to work the hours that I put on the

schedule for.'  (Dudley, dep. p. 120).


***


Upon her termination, the plaintiff was treated as an employee; she was offered a

severance package and continued health coverage under COBRA[4].

---

[4] A protection under the Consolidated Omnibus Budget Reconciliation Act limited for the most part to eligible employees.  Title 29 U.S.C. § 1161 et seq.

9

Most recently, the United States Supreme Court eschewed a rigid approach to the question of employer/employee status involving a membership interest in a professional corporation. In *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 123 S. Ct. 1673 (2003), the Supreme Court reversed and remanded the Ninth Circuit's opinion that shareholders of a professional corporation should be considered employees for purposes of the ADA. In its opinion, the Court focused on common law agency concepts and guidelines. Although the corporate form at issue in *Wells*, the professional corporation, did not exist at common law, the Court found that the common law element of control was nonetheless the "principal guidepost" that should be used when determining whether an individual receives statutory protection as an "employee". The Court suggested that this analysis can be used in any context in which Congress uses the term "employee", but fails to define that term, including Title VII, the ADEA, and the ADA.

The primary consideration of the control test is whether the employer controls the "means and manner of the worker's work performance." The control test does not provide a definitive list of necessary or conclusive factors. Rather, "all incidents of the relationship" must be considered, "with no one factor being decisive." In the context of a shareholder/director inquiry such as the one at hand, the Court looked at the factors suggested by the EEOC, which includes factors such as the organization's right to hire, fire, and set the rules and regulations of an

individual's work.  "We are persuaded by the EEOC's focus on the common-law touchstone of

control, see *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 89 L. Ed. 124, 65 S. Ct. 161 (1944), and

specifically by its submission that each of the following six factors is relevant to the inquiry

whether a shareholder-director is an employee:

> 'Whether the organization can hire or fire the individual or set the rules and regulations
>
> of the individual's work
>
> 'Whether and, if so, to what extent the organization supervises the individual's work
>
> 'Whether the individual reports to someone higher in the organization
>
> "Whether and, if so, to what extent the individual is able to influence the organization
>
> 'Whether the parties intended that the individual be an employee, as expressed in written
>
> agreements or contracts
>
> 'Whether the individual shares in the profits, losses, and liabilities of the organization."
>
> EEOC Compliance Manual § 605:0009.'  (Footnotes omitted).

As the EEOC's standard reflects, an employer is the person, or group of persons, who owns and

manages the enterprise.  The employer can hire and fire employees, can assign tasks to

employees and supervise their performance, and can decide how the profits and losses of the

business are to be distributed.  The mere fact that a person has a particular title -- such as partner,

director, or vice president -- should not necessarily be used to determine whether he or she is an

employee or a proprietor.  See ibid. ('An individual's title . . . does not determine whether the individual is a partner, officer, member of a board of directors, or major shareholder, as opposed to an employee').  Nor should the mere existence of a document styled 'employment agreement' lead inexorably to the conclusion that either party is an employee.  See ibid. (looking to whether 'the parties intended that the individual be an employee, as expressed in written agreements or contracts').  Rather, as was true in applying common law rules to the independent-contractor-versus-employee issue confronted in Darden, the answer to whether a shareholder-director is an employee depends on 'all of the incidents of the relationship . . . with no one factor being decisive.'  [*Nationwide Mut. Ins. Co.* v. *Darden,*] 503 U.S. [318], at 324[, 117 L. Ed. 2d 581, 112 S. Ct. 1344 (1992).]'"  *Clackamas Gastroenterology Assocs., P.C. v. Wells,* 123 S. Ct. 1673, 1680-1681 (2003).

Despite the defendants argument to the contrary, the factors cited by the Supreme Court weigh heavily in favor of the plaintiff's assertion that she was treated as an employee by the defendant.  Irrefutably, the plaintiff's employment was terminated, unilaterally, by the defendant, Hadelman.  If the plaintiff was an employer, her termination would not be plausible.  Conversely, the plaintiff had no authority to hire or fire the employees of NBD, LLC.  She did not possess the power to set the rules and regulations of the workforce for NBD, LLC.  These powers were confined to the defendant, Hadelman.  And, he exercised this authority, even to the

extent of setting the plaintiff's work schedule, and terminating her employment when he claimed she was not working the hours he had assigned to her.

Additionally, the termination of the plaintiff's employment dispels the defendant's intimation that the plaintiff's work went unsupervised. If the plaintiff's work went unsupervised, then her employment would not have been terminated for failure to work the hours assigned to her. ("And he started that I was terminated because, 'You refuse to work the hours that I put on the schedule for.'") (Dudley, dep. p. 120). Also, as the defendant, Hadelman, admitted, he took over the responsibility for scheduling the plaintiff's work hours when he became dissatisfied with the manner in which the plaintiff did the scheduling. (Hadelman, dep. pp. 55, 56). The defendants' actions are inconsistent with their claim that the plaintiff's work went unsupervised.

Similarly, the defendants' actions regarding the plaintiff's schedule and the termination of her employment contradict their assertion that the plaintiff was not answerable to someone higher in the organization. Most certainly, the defendant, Hadelman, believed and operated under the assumption that he was the highest authority in the organization and that the plaintiff was answerable to him.

With regard to the factor as to the ability to influence the company, the plaintiff had no such ability. Under Connecticut General Statutes and the NBD, LLC's Operating Agreement, the authority for the company's actions rested in the majority interest. The plaintiff's fifteen per

cent membership interest carried not an iota of authority. She could not leverage her votes with the other minority interest to influence company policy in the face of the seventy-five per cent ownership interest of the defendant, Hadelman. The defendant, Hadelman, possessed absolute control over the actions of the defendant, NBD, LLC.

The primary written agreement the parties had with regard to their relationship to NBD, LLC was the Operating Agreement. The Operating Agreement specified that "No Member shall be entitled to receive any guaranteed payment, except for such services rendered to the Company as a Super Majority in Interest agree should be compensated by a guaranteed payment and except as otherwise provided herein." Although the defendant, Hadelman, avers that the three members received an equal "draw", the compensation paid to the plaintiff was treated as wages subject to the normal employee withholdings, social security, medicare, federal income taxes, and state income taxes. The draws were regarded as wages paid to employees for tax purposes. (See defendant, Hadelman's affidavit, tab 12 and tab 13).[5]

The factor as to whether the parties intended that the individual be an employee, as expressed in written agreements or contracts, is of limited value in the circumstances of the present case. The only agreement of any note is the Operating Agreement. The Operating Agreement relates to the ownership interests of the members, not the work for the corporation,

---

[5] The tax returns show that the distribution to the plaintiff was for wages and not a distribution of profits.

except to the extent that any guaranteed payment would be based on such work, and only to the extent of such work. Clearly, the intent is to have these moneys viewed as wages for tax purposes. Compared to the reality of the parties' relationship, it is evident that the plaintiff was treated as an employee who had an investment in the company. The plaintiff's position was not dissimilar to someone working for a corporation in which he or she owns shares of stock of no more than fifteen percent, with seventy-five percent of the stock is owned by one individual. Most certainly, the worker/shareholder does not lose his or her status as an employee merely because of the ownership of stock.

The final factor, whether the individual shares in the profits, losses, and liabilities of the organization, does not mandate a result other than that the plaintiff be viewed as an employee of NBD, LLC. Although income and losses were allocated in accordance with each member's percentage interest in the LLC, this factor standing alone does not outweigh the other factor that weigh heavily in treating the plaintiff as an employee of NBD, LLC.

The defendants cannot escape the overwhelming evidence highlighted by the manner in which the plaintiff's employment was terminated that the plaintiff was treated as an employee of NBD, LLC. Exhibit 2 and Exhibit 3, the letters from the defendants to the plaintiff regarding the termination of the plaintiff's employment by NBD, LLC represent irrefutable proof that the plaintiff was viewed as an employee of NBD, LLC.

### c. *Defendant, NBD, LLC Employed Fifteen or More Employees*

The plaintiff alleged that the defendant, NBD, LLC, "is an employer, which engages in

an industry affecting commerce and, upon information and belief, employs more than 15 regular

employees". Complaint ¶ 10. The plaintiff further asserted that the defendant, NBD, LLC, is a

person within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, Title

42 U.S.C. §2000e(a). Complaint ¶ 11. The plaintiff also alleged that the defendant, NBD, LLC,

was an employer within the meaning of Section 701(b) of Title VII of the Civil Rights Act of

1964, Title 42 U.S.C. § 2000e(b). Complaint ¶ 12. As regards the pleading requirements of

Title VII, the plaintiff's allegations are sufficient to withstand a motion to dismiss on the element

involving the defendant's employment status under Title VII. And as discussed below, the

evidence raises a material issue of fact as to whether the defendant can be viewed as employing

in excess of fifteen employees.

The plaintiff is under no pleading requirement to allege in her complaint the specific

theory supporting her allegation that the defendant is an employer falling within Title VII. Her

failure to specify under what theory the defendant is an employer under Title VII does not render

her pleading frivolous or deficient. See *Russo v. Lightning Fulfillment, Inc.* 196 F. Supp. 203,

207 (D.Conn. 2002) ("There is thus no basis under Second Circuit law for defendant's position

that plaintiff's failure to plead a single employer theory or name Tompac in her complaint

deprives this Court of jurisdiction, or requires a grant of summary judgment in plaintiff's favor.

Accordingly, as a jury could conclude that defendant and Tompac were a single employer from

the facts alleged by plaintiff, defendant's motion for summary judgment is denied on this

ground.")  See also *Williams v. Greendolf, Inc.* 735 F. Supp. 137, 140 (S.D.N.Y 1990)

([D]efendants argue that plaintiff has failed to allege that Greendolf meets the Title VII

definition of "employer", which requires at least 15 employees, and that a reasonable pre-

complaint inquiry by plaintiff or his counsel, as required by Rule 11, would have determined that

Greendolf is not a Title VII employer.  Plaintiff argues that this is an affirmative defense, not a

pleading requirement to be met by plaintiff, and notes cases holding that under some

circumstances employees of separate corporations may be aggregated to meet the Title VII

definition of "employer". The Court finds that plaintiff need not allege explicitly that the

defendant meets the definition of "employer" for purposes of Title VII, and that, on the present

record, it cannot be said that plaintiff or his counsel violated Rule 11 in this regard."); See also

*Sparks v. Jay's A.C. & Ref., Inc.,* 971 F. Supp. 1433 (M.D.Fla. 1997) ("The Court rejects

Defendants' argument that Plaintiff has not alleged the jurisdictional requisites for an action

under Title VII or Florida Statutes.  Plaintiff has properly alleged that Defendants were her

employer and that Defendants fall within the scope of Title VII.").

"A single employer situation exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer...This standard applies when separate corporations are not what they appear to be, that in truth they are but divisions of departments of a single enterprise." *Russo v. Lightning Fulfillment, Inc.* 196 F. Supp. at 207 (Internal quotations and citations omitted).  The determination of single employer status is a question of fact.  *Lihli Fashions Corp. v. National Lab. Rel. Bd.,* 80 F.3d 743, 747 (2d Cir. 1996) ("The determinations of both single employer and alter ego status are questions of fact.")  There exists, in the least, a genuine issue in dispute regarding the single employer status of the defendant, NBD, LLC and Subway # 98, and, as such, summary judgment on the basis of the numerosity element of Title VII is inappropriate.  Title VII  applies to employers with "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . " Title 42 U.S.C. § 2000e(b).  Separate entities may be consolidated for purposes of meeting this employee numerosity requirement in certain circumstances.  See *Artis Francis Hospital Band Booster,* 161 F.3d 1178, 1184 (8th Cir. 1998).

The Second Circuit Court of Appeals has adopted a four part test to determine whether the employees of one entity should be included with those of a second entity for purposes of satisfying the definition of employer under Title VII.  "A single employer situation exists where

two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer...The single employer standard is relevant when separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise." *Peltier v. Apple Health Care, Inc.,* 130 F. Sup. 2d 285, 288 (D.Conn. 2000) (Internal quotations and citations omitted).  "A parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence of (1) interrelation of operations, (2) centralized control of operations, (3) common management, and (4) common ownership or financial control." *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir. 1995).  "Separate entities can be consolidated to meet the Title VII employee numerosity requirement based on the following factors: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." *Artis Francis Hospital Band Booster,* 161 F.3d at 1184.  "We focus our inquiry...on the second factor, centralized control of labor relations." *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d at 1241.

The evidence regarding the common ownership and management of the defendant, NBD, LLC and Subway # 98 clearly would permit a trier of fact to consolidate their employees for the purpose of satisfying the employee numerosity requirement under Title VII.  The affidavit of the plaintiff strongly points to the fact that the relationship of the defendant and Subway # 98 meet

the requirements of the four factors for determining single employer status. "The test examines the interrelation of operations, common management, centralized control of labor relations and common ownership...Also relevant are use of common office facilities and equipment and family connections between or among the various enterprises...To demonstrate single employer status, not every factor need to be present, and no particular factor is controlling." *Lihli Fashions Corp. v. National Lab. Rel. Bd.*, 80 F.3d at 747. (Internal quotations and citations omitted). There is little doubt that the defendant, Hadelman, directs, manages and controls the operations, including employee relations, of both the defendant and Subway # 98. The controlling ownership of the defendant, Hadelman, in NBD, LLC and his sole ownership of the company that owns Subway # 98, strongly indicates their interrelationship. The defendant, Hadelman, works for both companies. He receives compensation from both entities. Although it is not necessary to establish all four factors to demonstrate single employer status, the facts of the present case do satisfy each factor.

There is ample evidence that the defendant, NBD, LLC, and Subway # 98 have interrelated operations. "The first factor, interrelation of operations, may be found where the two entities share governing board members and bylaws, as well as control of day to day operations. Peltier v. Apple Health Care, Inc., 130 F. Sup. 2d at 288. In the present case, in addition to the

defendant, Hadelman, owning unilateral control over the defendant, NBD, LLC, he also owns Subway # 98 outright. Additionally, he controls the day-to-day operations of both.

The second factor, common management, "may be evidenced by an overlap of officers or members who sit on the board of directors. Peltier v. Apple Health Care, Inc., 130 F. Sup. 2d at 288. As stated above, the defendant, Hadelman, is controlling member of NBD, LLC, he is also the exclusive owner of Subway # 98.

The defendant, Hadelman's, command of the employment decisions of both the, NBD, LLC, and Subway # 98 satisfies the most important element; see Cook v. Arrowsmith Shelburne, Inc., 69 F.3d at 1241, centralized control of labor relations. The defendant, Hadelman, is the sole decision maker with regard to the wages, hours and other conditions of employment for the employees of both the defendant, NBD, LLC, and Subway # 98. He exercised managerial control over the hiring and firing of employees at the two franchises. The defendant, Hadelman, answered to no person or entity, other than himself, with regard to personnel policies and decisions affecting employment matters and issues at both the defendant, NBD, LLC, and Subway # 98. He runs the defendant, NBD, LLC, and Subway # 98 in a direct, hands-on fashion, establishing the operating practices and management practices of the defendant, NBD, LLC, and Subway # 98. In particular, he maintained direct control over both companies' labor relations.

As regards the final element, the stock ownership adds to the conclusion of single employer status of the defendant, NBD, LLC, and Subway # 98. The defendant, Hadelman, owns seventy-five percent of NBD, LLC and one hundred percent of Subway # 98.

The number of employees working for Subway # 98, under the single employer theory, should be added to those of the defendant, NBD, LLC, to satisfy the fifteen employee definition of employer under Title VII. Accordingly, as a jury could conclude that defendant, NBD, LLC and Subway # 98 were a single employer from the facts alleged by plaintiff, defendant's motion for summary judgment should be denied. *Russo v. Lightning Fulfillment, Inc.* 196 F. Supp. at 207 ("Accordingly, as a jury could conclude that defendant and Tompac were a single employer from the facts alleged by plaintiff, defendant's motion for summary judgment is denied on this ground.").

For the reasons set forth above, the defendants' motion for summary judgment should be denied. The plaintiff has raised a legitimate factual issue regarding her status as an employee of the defendant, NBD, LLC, as well as the single employer condition of the defendant, NBD, LLC and Subway # 98.

THE PLAINTIFF- KATHERINE DUDLEY

BY: _____

Thomas W. Bucci
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT  06604
Tel: (203) 366-3939
Fax: (203) 337-4588
Email: tbucci@wwblaw.com
Fed Bar # ct07805

## CERTIFICATION

THIS IS TO CERTIFY that on the 5th day of December 2003, a copy of the foregoing **Memorandum In Opposition To Motion For Summary Judgment** was sent via U.S.P.S. to the following:

Frederick W. Krug, Esquire
MATZKIN, KRUG & DANEN
76 Center Street
Waterbury, CT  06702

Thomas W. Bucci